UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

VICTOR DE LA CRUZ,

    Plaintiff,

v.                                                  Case No:   2:17-cv-688-FtM-29MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Before the Court is the Complaint (Doc. 1) filed on December 13, 2017.  Plaintiff Victor De La Cruz seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's claim for a period of disability and disability insurance benefits.  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number) and the parties filed a joint legal memorandum detailing their respective positions.  For the reasons set out herein, the Undersigned respectfully recommends that the decision of the Commissioner be **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.**    **Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

    **A.**    **Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe, making the claimant unable to do his previous work or any other

substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.  Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

### B.     Procedural History

On July 1, 2014, Plaintiff filed an application for disability insurance benefits.  (Tr. at 76, 179-185).  Plaintiff asserted an onset date of March 8, 2013.  (*Id.* at 179).  Plaintiff's application was denied initially on September 16, 2014 and on reconsideration on November 4, 2014.  (*Id.* at 76, 77).  A hearing was held before Administrative Law Judge ("ALJ") Paul Greenberg on July 11, 2016.  (*Id.* at 34-75).  The ALJ issued an unfavorable decision on January 3, 2017.  (*Id.* at 16-29).  The ALJ found Plaintiff not to be under a disability from March 8, 2013, through the date of the decision.  (*Id.* at 28).

On October 23, 2017, the Appeals Council denied Plaintiff's request for review.  (*Id.* at 1-5).  Plaintiff filed a Complaint (Doc. 1) in the United States District Court on December 13, 2017.  This case is ripe for review.

### C.     Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled.  *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1]  An ALJ must determine whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment;

---

[1] Unpublished opinions may be cited as persuasive on a particular point.  The Court does not rely on unpublished opinions as precedent.  Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P.  Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

(3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. (Tr. at 18). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 8, 2013, the alleged onset date. (*Id.*). At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "degenerative disc disease and learning disorder." (*Id.*). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (*Id.* at 19).

At step four, the ALJ found:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 [C.F.R. §] 404.1567(a) except with these additional limitations: The claimant occasionally can climb ramps and stairs, kneel, crouch, and crawl. The claimant cannot perform work climbing ladders, ropes, and scaffolds. The claimant occasionally can reach overhead (bilaterally). The claimant cannot work around unprotected heights or moving mechanical parts. He cannot operate motorized equipment as part of a job. He can perform work involving simple, routine tasks.

(*Id.* at 21). The ALJ determined that Plaintiff was unable to perform any past relevant work. (*Id.* at 27). The ALJ considered Plaintiff's age, education, work experience, and RFC, and found at step five that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (*Id.*). The ALJ noted that the vocational expert identified the

following representative occupations that an individual with Plaintiff's age, education, work experience, and residual functional capacity could perform: (1) order clerk, DOT # 209.567-014, unskilled, SVP 2, generally performed at sedentary level; (2) tube operator, DOT # 239.687-014, unskilled, SVP 2, generally performed at sedentary level; (3) hand bander, DOT # 920.687-030, unskilled, SVP 2, generally performed at sedentary level; and (4) sewing machine operator DOT # 782.687-046, unskilled, SVP 2, generally performed at sedentary level. (*Id.* at 28).[2] The ALJ concluded that Plaintiff was not under a disability from March 8, 2013, through the date of the decision. (*Id.*).

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932

---

[2] "DOT" refers to the *Dictionary of Occupational Titles*.

F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**II.     Analysis**

On appeal, Plaintiff raises three issues.  As stated by the parties, they are:

(1)     Whether the ALJ applied the correct legal standards to the opinion of Dr. Bordy.

(2)     Whether the ALJ applied the correct legal standards to the opinion of Dr. Bowman.

(3)     Whether the ALJ applied the correct legal standards to the opinion of Dr. Frain.

(Doc. 19 at 13, 19, 24).

All of these three issues concern whether the ALJ applied the correct legal standards to these providers' opinions.  Dr. Bordy and Dr. Bowman were both one-time consultative examiners and, as such, the same legal analysis applies to their opinions.  (*Id.* at 13, 19).  Thus, the Court sets forth the appropriate legal analysis first and then discusses each doctor's opinion separately.  Dr. Frain, however, is a vocational expert.  Thus, the legal analysis pertaining to Dr. Frain's opinion differs and is addressed separately below.

**A.     Whether the ALJ Applied the Correct Legal Authority to Dr. Bordy's and Dr. Bowman's Opinions**

Plaintiff argues that the ALJ accorded substantial weight to Dr. Bordy's opinion, but then improperly substituted the ALJ's judgment for that of Dr. Bordy.  (Doc. 19 at 15).  Further, Plaintiff argues that, based upon this error, the ALJ further erred in the hypothetical to the vocational expert.  (*Id.*).  Plaintiff also contends that even though the ALJ accorded some weight to Dr. Bowman's opinion that Plaintiff had moderate to marked difficulties maintaining attention

5

and concentration, the ALJ erred in finding that Plaintiff had mild difficulties maintaining concentration, persistence, or pace.  (*Id.* at 20).

The Commissioner argues that Plaintiff's suggestion that the ALJ substituted his opinion for Dr. Bordy's is meritless and the final responsibility for determining an RFC rests with the ALJ.  (*Id.* at 18).  The Commissioner also contends that the ALJ properly considered Dr. Bowman's opinion.  (*Id.* at 21-23).

### 1. Weight of Medical Providers' Opinions

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the ALJ's RFC determination at step four.  *See Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012).  The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011).  Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."  *Id.* (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004).  The Eleventh Circuit has concluded that good cause exists when:  (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's

6

own medical records. *Id.* In the instant case, however, Dr. Bordy and Dr. Bowman are not treating physicians, but instead one-time examining consultants. Thus, Dr. Bordy's and Dr. Bowman's opinions are not entitled to the same deference as treating physicians' opinions.

Even though examining doctors' opinions are not entitled to deference, an ALJ is nonetheless required to consider every medical opinion. *Bennett v. Astrue*, No. 308-CV-646-J-JRK, 2009 WL 2868924, at *2 (M.D. Fla. Sept. 2, 2009) (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)). "The ALJ is to consider a number of factors in determining how much weight to give to each medical opinion: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's 'opinion is with the record as a whole'; and (5) the doctor's specialization." *Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).

### 2. Dr. Bordy

Plaintiff asserts that in a post-hearing opinion, Dr. Bordy – a one-time consultative examiner – determined that Plaintiff was capable of sitting for two hours at a time for a total of four hours, standing for one hour at a time for a total of two hours, and walking for one hour at a time for a total of two hours during an eight-hour workday. (Doc. 19 at 14 (citing Tr. at 583)). Plaintiff states that the ALJ accorded Dr. Bordy's opinion substantial weight, yet found Plaintiff capable of performing sedentary work that generally provides for standing or walking of no more than two hours in an eight-hour workday and sitting for a total of six hours in an eight-hour workday. (*Id.* at 14-15). Thus, Plaintiff argues that the ALJ substituted his opinion for that of Dr. Bordy. Further, Plaintiff argues that the hypothetical to the vocational expert did not include

7

an individual who could sit for only two hours at a time for a total of four hours, stand for one hour at a time for a total of two hours, and walk for one hour at a time for a total of two hours during an eight-hour workday. (*Id.* at 15). Plaintiff argues that the hypothetical to the vocational expert did not include these restrictions and, thus, the vocational expert did not testify as to how these restrictions impact the sedentary occupational base. (*Id.*).

The Commissioner contends that the ALJ gave substantial weight to Dr. Bordy's opinion and found that Plaintiff retained the RFC for a range of sedentary work with certain limitations. (*Id.* at 17). The Commissioner argues that the ALJ supported his decision by discussing Plaintiff's subjective complaints, longitudinal treatment records, favorable results with medication, and daily activities. (*Id.* (citing Tr. at 13-33)) Further, the Commissioner contends that in reaching his decision, the ALJ noted Plaintiff's lack of medical treatment and part-time work as a janitor to suggest that Plaintiff's exertional abilities may be greater than sedentary. (*Id.* (citing Tr. at 25)).

Dr. Bordy examined Plaintiff on August 9, 2016. (Tr. at 573). Upon examination, Dr. Bordy's impressions were chronic lumbar, lumbosacral pain "s/p fusion" with hardware at L4/L5 in 2012 with myofascitis, learning disability, and illiteracy. (*Id.* at 577). On August 9, 2016, Dr. Bordy completed a Medical Source Statement of Ability To Do Work-Related Activities (Physical). (*Id.* at 582-87). Dr. Bordy found, *inter alia*, that Plaintiff had the ability to sit for two hours at one time and for four hours total, stand for one hour at one time and for two hours total, and walk for one hour at one time and for two hours total in an eight-hour workday. (*Id.* at 583).

The ALJ afforded substantial weight to the physical portion of consultative examiner Dr Bordy's post-hearing opinion. (*Id.* at 25). The ALJ noted that Dr. Bordy's opinion included

8

"exertional abilities approaching the sedentary level." (*Id.*). The ALJ specifically noted in a footnote that Dr. Bordy completed a checklist-type assessment that indicates that Plaintiff could sit for only four hours per day, stand for two hours per day, and walk for two hours per day. (*Id.* at 25 n.2). The ALJ noted that Plaintiff's representative argued – as counsel does here – that with these limitations, Plaintiff's capacity is less than sedentary, and Plaintiff is unable to sustain competitive employment. (*Id.*). The ALJ disagreed with that assessment stating:

> I respectfully disagree, and I decline automatically to interpret the opinion of Dr. Bordy or any other medical evaluator with this degree of literalism. As a general proposition, I do not assume that medical providers are familiar with the precise vocational implications of these kinds of scorecard assessments (exertional, postural, manipulative, etc.), and therefore it is more appropriate to interpret this assessment[] more broadly, in the context of the full evidentiary record. Overall, I view Dr. Bordy's assessment of the claimant's ability to sit, stand and walk as being consistent with my finding of sedentary exertional ability, with additional postural limitations.

(*Id.*). The ALJ credited and relied on Dr. Bordy's assessment, but also noted the lack of recent medical care for Plaintiff and Plaintiff's ability to perform janitorial work on a part-time basis that suggests Plaintiff's exertional ability may actually be somewhat greater than sedentary. (*Id.* at 25).

Here, the Undersigned finds that the ALJ considered the guidelines for sedentary work and thoroughly considered Dr. Bordy's opinion. The ALJ explained why he interpreted Dr. Bordy's opinion more broadly in the context of the full evidentiary record when determining that Plaintiff is capable of performing work at the sedentary exertional level. (Tr. at 25 n.2). Thus, the Undersigned finds that the ALJ's decision is supported by substantial evidence as to this issue.

Plaintiff also asserts that the ALJ never asked the vocational expert to consider the impact on the sedentary occupational base of an individual who could sit for only two hours at a time for

a total of four hours in an eight-hour workday.  (Doc. 19 at 15).  If an administrative law judge decides to use a vocational expert, for the vocational expert's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  *Winschel*, 631 F.3d at 1180.  However, an ALJ is not required to include findings in the hypothetical that the ALJ found to be unsupported by the record.  *Lee v. Comm'r of Soc. Sec.*, 448 F. App'x 952, 953 (11th Cir. 2011) (citing *Crawford*, 363 F.3d at 1161).

Here, the ALJ interpreted Dr. Bordy's assessments more broadly and, in the context of the full evidentiary record, determined that Plaintiff was capable of performing sedentary work with certain limitations.  (Tr. at 25 n.2).  The ALJ posed a hypothetical that included all of Plaintiff's impairments that the ALJ found were supported by the entire record.  (*Id.* at 68-70).  Thus, the Undersigned finds that substantial evidence supports the ALJ's decision regarding the hypothetical posed to the vocational expert.

### 3. Dr. Bowman

Plaintiff states that he presented to Paula Bowman, Psy.D. on September 8, 2014 for a consultative psychological evaluation.  (Doc. 19 at 19).  Plaintiff claims that Dr. Bowman found Plaintiff's attention and concentration were moderately to markedly impaired, likely due to cognitive deficits.  (*Id.*).  Plaintiff contends that even though the ALJ gave some weight to Dr. Bowman's opinion, the "ALJ inexplicably found that Mr. De La Cruz had mild difficulties maintaining concentration, persistence, or pace (Tr. 21)."  (*Id.* at 20).  Plaintiff argues that limiting Plaintiff to simple routine tasks in his RFC is not sufficient under *Winschel*, 631 F.3d at 1180 to account for this impairment.  (*Id.*).

The Commissioner argues that Dr. Bowman as a one-time examining doctor is not entitled to deference or special consideration.  (*Id.* at 21).  Further, the Commissioner contends

that the ALJ did not find that Dr. Bowman's opinion was supported by the evidence of record that included that Plaintiff had a long history of steady work and had not received ongoing mental health treatment. (*Id.* at 22). The Commissioner also contends that the ALJ assigned substantial weight to Dr. Westby's opinion that Plaintiff had mild restrictions in maintaining concentration, persistence, or pace. (*Id.* (citing Tr. at 83)). Finally, the Commissioner argues that "[a]n ALJ may account for his PRT [psychiatric review technique] ratings when the medical evidence supports the ALJ's RFC finding or the ALJ otherwise implicitly accounts for his ratings." (*Id.* at 23). Thus, the Commissioner argues that the ALJ here "accounted for his rating of mild difficulties in concentration, persistence, or pace by limiting Plaintiff to work involving simple, routine tasks." (*Id.* at 23 (citing Tr. at 21-26)).

In the decision, the ALJ discussed Dr. Bowman's findings. The ALJ afforded some weight to Dr. Bowman's consultative psychological assessment. (Tr. at 26). The ALJ noted that Dr. Bowman diagnosed Plaintiff with unspecified anxiety disorder, but the ALJ also noted that there is no medical evidence of record that Plaintiff ever received any mental health treatment from a psychiatrist, psychologist, or other mental health professional. (*Id.* at 19). Further, the ALJ found that Dr. Bowman's negative assessment of Plaintiff's mental health status is not supported by the full record, which included a long history of steady work prior to his back problems. (*Id.* at 26). Specifically, as to Dr. Bowman's finding that Plaintiff was moderately to markedly impaired as to concentration, persistence, or pace, the ALJ noted Dr.'s Bowman's finding, but also noted that Dr. Bowman found Plaintiff oriented to all spheres. (*Id.* at 21). Further, the ALJ reiterated that Plaintiff had a solid history of steady full-time employment until he was injured on the job in 2012. (*Id.*).

11

In addition, based at least in part on Dr. Bowman's records, the ALJ limited Plaintiff's RFC to work involving simple, routine, tasks. (*Id.* at 25). The ALJ determined that these restrictions adequately accommodated Plaintiff's alleged mental limitations associated with his learning disability or intellectual impairment. (*Id.*). Further the ALJ found that "there is no indication that the claimant's learning disability is so severe that it would preclude him from performing work within his residual functional capacity. This is particularly evident in light of the claimant's long work history." (*Id.*).

The Undersigned finds that the ALJ noted that Dr. Bowman was a one-time consultative examining psychologist and the ALJ thoroughly considered her opinion. (*Id.* at 19, 21, 25, 26). The ALJ explained that Dr. Bowman's opinion was not consistent with the record as a whole based at least partially on the fact that Plaintiff had a long, steady, work history and Plaintiff never sought mental health treatment. (*Id.* at 19, 26). Further, in support of his decision to afford some weight to Dr. Bowman's opinion, the ALJ noted that Dr. Bowman found that Plaintiff was oriented in all spheres. (*Id.* at 21). Thus, the Undersigned finds that the ALJ properly considered Dr. Bowman's opinion, did not err in affording it some weight, and supported his decision by substantial evidence when finding Plaintiff had mild difficulties in maintaining concentration, persistence, or pace.

Plaintiff also argues that limiting Plaintiff to simple, routine tasks in a hypothetical to the vocational expert does not account for Plaintiff's limitations as to concentration, persistence, and pace. (Doc. 19 at 20). The Commissioner argues that the ALJ accounted for his rating of mild difficulties in concentration, persistence, or pace by limiting Plaintiff to work involving simple, routine tasks. (*Id.* at 23).

When the medical evidence demonstrates that a plaintiff can engage in simple, routine tasks despite limitations in concentration, persistence, and pace, courts "have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." *Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 611 (11th Cir. 2015) (citing *Winschel*, 631 F.3d at 1180).  However, a vocational expert's testimony does not constitute substantial evidence if the ALJ does not indicate that the medical evidence suggests that the plaintiff's ability to work was unaffected by his concentration, persistence, or pace limitations.  *Id.* at 611-12.

In the instant case, the ALJ determined that the evidence – including the evidence from Dr. Bowman – indicated that Plaintiff was capable of performing work involving simple routine tasks *despite* his mental impairments.  (Tr. at 21, 25).  Dr. Bowman specifically found that "[v]ocationally, the claimant can follow and understand simple directions and instructions.  He can perform simple tasks independently."  (*Id.* at 566-67).  Thus, the Undersigned finds that the medical evidence supports the ALJ's finding that *despite* Plaintiff's mental limitations, he can perform work involving simple, routine tasks and that the ALJ properly accounted for Plaintiff's limitations by including in the hypothetical posed to the vocational expert that Plaintiff was limited to simple, routine tasks.  (*Id.* at 25).

Accordingly, the Undersigned finds that substantial evidence supports the ALJ's decision as to the weight afforded Dr. Bowman's opinion, in the hypothetical presented to the vocational expert, and in formulating Plaintiff's RFC.

### B. Whether the ALJ Applied the Correct Legal Authority to Dr. Frain's Opinion

Plaintiff argues that the ALJ failed to account for limitations found by vocational specialist Julianne Frain, Ph.D. as to Plaintiff's fine motor skills in Plaintiff's RFC assessment or

in the hypothetical question posed to the vocational expert. (Doc. 19 at 25). The Commissioner argues that Dr. Frain is not an acceptable medical source capable of making a diagnostic assessment. (*Id.* at 26).

Vocational specialists do not qualify as "acceptable medical sources" pursuant to 20 C.F.R. § 404.1513(a) and SSR 06-03p, 2006 WL 2329939, at *1-2 (Aug. 9, 2006). As such, non-acceptable medical sources cannot establish the existence of a medically determinable impairment. *See* SSR 06-03p, 2006 WL 2329939, at * 2. Although not an "acceptable medical source," "other sources" are entitled to consideration "and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id.*

Dr. Frain administered tests to Plaintiff, including one that measured his sustained attention and selective attention. (Tr. at 501). Dr. Frain found, *inter alia*, the following: "Mr. Delacruz scored a T-score of 23 for total speed, placing him in the "moderately-to-severely impaired" range in this category, and a 20 for total accuracy, placing him in the "severely" range in this category. This suggests he would demonstrate profound difficulty on tasks involving fine motor skills and would complete such tasks at a pace far below average." (*Id.* at 502).

In the decision, the ALJ considered Dr. Frain's testing results. (*Id.* at 20, 24-25, 26). The ALJ noted that Dr. Frain found Plaintiff had attended special education classes and received some form of a "special diploma" when he graduated high school. (*Id.* at 25). The ALJ also noted that Dr. Frain reported that Plaintiff maintained steady concentration throughout the assessment and Plaintiff was capable of working on basic tasks after verbal prompting, indicating that Plaintiff's mental limitations were not as severe as he alleged. (*Id.*). The ALJ afforded partial weight to Dr. Frain's report and assessment. (*Id.* at 26). The ALJ noted that Dr. Frain is not a psychologist and is not an acceptable medical source capable of making diagnostic

14

assessments. (*Id.*). However, the ALJ found Dr. Frain's testing of Plaintiff's mental function "somewhat useful, and supports the residual functional capacity." (*Id.*). The ALJ also found "[w]ith regard to Dr. Frain's observation that the claimant is 'unemployable,' this opinion is given no weight because it is a question reserved to the Commissioner." (*Id.*).

As an initial matter, the Undersigned finds that Dr. Frain is not an acceptable medical source and, thus, cannot establish a medical impairment. *See* SSR 06-03p, 2006 WL 2329939, at *2. Even though Dr. Frain is not an acceptable medical source, the Undersigned nevertheless finds that the ALJ carefully considered Dr. Frain's testing results and assessment and properly afforded partial weight to Dr. Frain's report. (Tr. at 26). The Court notes that the ALJ found Dr. Frain's assessments somewhat useful in formulating Plaintiff's RFC. (*Id.*). Further, when formulating Plaintiff's RFC, the Court finds that the ALJ supported his finding that Plaintiff had mild difficulties in concentration, persistence, or pace by considering Plaintiff's function report, noting Plaintiff's testimony, and considering Plaintiff's solid work history. (*Id.* at 20-21). Finally, the Court finds that Dr. Frain's finding that Plaintiff is unemployable is a finding reserved exclusively to the Commissioner. *See Lanier v. Comm'r of Soc. Sec.*, 252 F. App'x 311, 314 (11th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(1)-(3).

Accordingly, the Undersigned finds that the ALJ's properly assessed Dr. Frain's report and the decision is supported by substantial evidence.

### III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Undersigned finds that substantial evidence supports the ALJ's decision and the decision was decided upon proper legal standards.

**IT IS RESPECTFULLY RECOMMENDED:**

The decision of the Commissioner be **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g).

Respectfully recommended in Chambers in Ft. Myers, Florida on October 26, 2018.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:

Counsel of Record
Unrepresented Parties